We're here for argument in the case of Crosby v. Schwartz, and you may proceed. My name is Eric Weaver. I'm here on behalf of Mr. Crosby. And I just want to alert the Court that my asthma is really acting up, so if I clear my throat, I'm not being rude. No problem. I think in this case, looking at the Eighth Amendment issue, I think in this case there's no doubt that the decision, the primary part of the Court of Appeal of California's decision was subjectively unreasonable. They found that his mental health issues played no role based on his mental health status at the time of the trial and discounted the fact that he'd been sent to the state hospital for two years to be restored to competency. So I think given that that's subjectively unreasonable, looking at the Gonzalez v. Duncan, we have to decide where the factors of this case fall on the basis of that analysis. So I've gone through a checklist of the pros and cons of our case compared to Gonzalez, and I think the equities or the balance of it shows that this is an objectively unreasonable decision, and the writ should be granted. In Gonzalez, the failure to register was a failure to register on the birthday. That weighs in favor of Gonzalez. Here it was a failure to change the address as well as to register on the birthday. So that's a little bit more serious here. The second point is that there was no update between February 24th when he's released from jail and July 15th when he's arrested. Now, an important part of that factor is he was released to the streets. He was not released to a residence. His mother moved from his prior residence on February 15th. He was released to the streets on February 24th of 1999. So you have a seriously mentally unstable person released to the streets into an unstable environment. In addition, although he didn't update his address, he was living within a couple blocks of his registered address the whole time, and they found him in an apartment next door to where he was. So although I know it's not compliance with the law, if the police had had reason to look for him, I don't think they would have had a hard time finding him, and I think that weighs in favor of this being an excessive sentence. Was that the apartment his mother had moved to? No. He was staying with friends, staying on a couch here, staying with a friend there. But he was always within, it's undisputed, he was within a few blocks of where he was. The third thing is the police had a history of not being serious about his registration requirements. The police officer testified that in 1998 he registered five months late, and the officer couldn't explain that, but he could say that they didn't arrest him. Officer Anderson also said that if people came in voluntarily, even if they were late, it was his policy not to arrest them because they showed good faith. In addition, the birthday registration requirement at that time was relatively new, and Officer Anderson had a policy of calling people to remind them. He said that they had abandoned that policy because of the time of Mr. Crosby's registration. The law had been in effect for a couple of years now, and he thought people had time to get used to it. But the fact remains, there's an inference that can be drawn, he'd been reminded in the past. As I said, he has serious mental issues. He's bipolar, schizophrenic, he's mildly retarded. His medical advisor said that he would have a hard time organizing the normal details of life. What is the case that you would refer us to that is most like this one in terms of, in your view, being an unreasonable application? I think that would be the Gonzales case is the closest one. And I wanted to make one point that the respondent raised. They say that because Ewing and Andrade said that the case is not, that the three strikes law is not per se a violation of the Eighth Amendment, I would draw the Court's attention to the more recent case of Graham v. Florida, which is 130 Supreme Court, 2011-2022. And there, the Supreme Court stated clearly that Harmelin states the standard, and that it states, and this Court has repeatedly held, and the Supreme Court itself held in Panetti v. Quarterman, that when there's a clear standard, the courts of appeal are allowed to apply that standard to the facts of an individual case without having to find a U.S. Supreme Court case that has exactly the same facts. What I'm concerned about here, Gonzales, of course, dealt with the annual registration. True. And that has been held to be far less important than the relocation registration so that the police know where he is. Now, I know you've told us that they didn't really care, they didn't look for him, and so on and so on. But nonetheless, that seems to be a distinction that has been made, and the California Supreme Court has also made that distinction in Meeks. How would you respond to that? Well, I did acknowledge that fact right up front, that that was a distinction between this case and Gonzales. I think it is a more serious violation. We're not talking about whether the man was innocent or not or whether there's sufficient evidence or not. We're talking about whether a 26-year-to-life sentence violates the Eighth Amendment in this case. He's already served 13 years for this offense. I mean, this is a petty thing that happened, but, of course, we thought that before in the Ninth Circuit when it went back up to the Supreme Court on the cigarettes or the candy or whatever. So let me just tell you where my reluctance is and see if you can explain where you think we go, and that is the Court, as you've already said, in the Gonzales case, you know, talked about in some ways the minimality or the de minimis aspect of the birthday issue, but they did contrast there, saying that the address change requirement was directly related to knowing whereabouts. So my difficulty or what I'm wrestling with is that's this case, which they said, you know, was not Gonzales and that the birthday was not the same as the address change. How can we as a panel, without going in bank, go beyond that Gonzales statement? Well, I think that you have the very compelling circumstance in this case that the – although I acknowledge the difference in the statutes, in Gonzales there was no evidence of mental illness. Here is a substantial evidence of serious mental problems that would – But was it described that way by the State Court, the mental illness? I thought it was – That's what's objectively unreasonable about their decision. The trial court said, in connection with the Ferretta motion, Mr. Crosby said, I'm confused, I waived my jury trial, and I didn't understand what was going on. The judge said, when he was trying to withdraw, he said, I don't think you're confused. I've been listening to you. I think you're just trying to delay. That has to do with his mental status at the time of the hearing. He spent – he was found to be incompetent by a trial judge and spent two years in the hospital taking psychotropic medications to restore him to competency for trial. Then the California Court of Appeals said, well, his mental state has no impact on whether this is a violation of the Eighth Amendment or not because the trial judge said he was clear and competent. But the trial judge was talking about a completely different circumstance. That was after he'd been under serious treatment for two years in the state hospital. So that's an objectively unreasonable factual finding that this court does not have to defer to because it's clear from the record itself that that's not true. You know, I'm real empathetic with your position, but I just – I don't see how we get around AEDPA here. I mean, I know you're talking about an unreasonable application and so on, but, I mean, there does not – Graham v. Florida, to the contrary, notwithstanding, I'm not – I'm not aware of any Supreme Court case that you can cite to that gives us any comfort in this area. Can you help me with that? Well, in Graham, it says that the court must start with comparing the gravity of the offense with the severity of the sentence. I understand that, but unfortunately, like Judge McKeown pointed out, we have this litany of cases that have upheld ghastly sentences for three strikes crimes that are far, far less serious than the offense that your client was originally convicted of here. That's true. I'm running out of my time. I do want to make a quick point here, which is that the – also, his record is severely exaggerated here. He had a forcible – a very serious offense, forcible rape and forcible oral copulation in 1981. And how was the victim? That I don't know. It wasn't as charged as a child case, though. Okay. So I assume she was an adult. Okay. Or he. I don't know. And he had a robbery in 1990. Those are the only two offenses he went to prison for. He had a breaking and entering in Maryland in 1981 before the sex offense, for which he got probation. And then in 1999, he got a misdemeanor spouse abuse, for which he was sentenced to local custody, and from which he was released onto the streets. So this is not a person who's – this is a person who doesn't have a pretty record and definitely qualifies as a three-striker. But this is not a serious record compared to these litany of cases where you have an endless list of felonies, violent felonies, et cetera. But how do we square that, counsel, with the three-strikes cases that have been upheld by the Supreme Court, where – I mean, they're the kinds of cases that would – ought to be included in Les Miserables. I mean, they're, you know, stealing for a loaf of bread kind of thing. And they've upheld that stuff. I agree with you. I just think that the cavalier way the court of appeal addressed this, by just summarily dismissing – at a minimum, it should be remanded – in order that they should remand it and reconsider the state courts in light of the true facts of this case. But, again, I'm just looking here at 2254E1 of AEDPA that says, The factual findings by a state court are presumed correct unless you show – rebut the presumption by clear and convincing evidence. Where's that? The evidence is clear and convincing that he was incompetent when he was arrested because he was sent to Atascadero and to – and also to Patton. He was there for two years. I mean, I've been doing this a long time. That's a long time to restore someone to competency. The medical record shows he has these serious – there's no doubt that he's schizophrenic, bipolar, et cetera. The court cavalierly said, based on the fact that he'd been restored to competency, that that wasn't an issue. That's not a – that's not – that's clear and convincing evidence that that's not a reasonable factual finding. And it's not by adding any new evidence. We haven't gone anywhere outside the AEDPA. That's just the state of the evidence that's in the record. They misread the record. Thank you.  I don't know if you'll give me 20 seconds at the end, but thank you very much. Good afternoon, Your Honors. I have to disagree with counsel to the extent he says he's not trying to go outside the record. Purporting to add his own expertise as to how long is a long time for someone to get restored to competence is definitely going outside the record. Moreover, any reference to Graham v. Florida overlooks that the California Court of Appeal made its decision in June 2003, and therefore any later case isn't going to be relevant at all. More importantly, and frankly this was a flaw in Gonzales as well, but this Court doesn't actually have to decide whether Gonzales was wrong. It's enough that this Court recognizes its job is simply to determine what a state court could have interpreted Ewing to mean, what some fair-minded jurist could think the case means. And the problem fundamentally is that over and over, the emphasis by Petitioner is my defense really wasn't that bad. Yeah, it was a felony, but it really isn't that bad. The problem, and, you know, going on Duncan for Gonzales v. Duncan, the argument that well, this offense doesn't really show a particular type of recidivism. None of that matters. Footnote 2 in Ewing v. California says flat out, California legislature therefore made a deliberate policy decision that the gravity of the new felony should not be a determinative factor in triggering the application of the Three Strikes Law. Neither the Eighth Amendment nor this Court's precedent forecloses that legislative choice. Who are you quoting there? That is footnote 2 of Ewing v. California, Your Honor. In other words, a fair-minded jurist could decide that under the United States Supreme Court precedent, it is irrelevant how the felony looks standing alone. Rather, the very fact that before you commit that felony, you had at least two prior serious or violent felonies is enough to make it grave enough under the Eighth Amendment for a life term. No amount of ignoring that language is going to work. Gonzales, unfortunately, didn't cite that language either. Gonzales spent a lot of time talking about, you know, this particular offense and just ignored the language. I don't know how — If Gonzales had followed that, they would have come out in favor of the State. I'm sorry? You're saying if Gonzales had been correctly decided, it would have come out in favor of the State. Oh, to be sure, but the question for you isn't simply whether Gonzales is correct. Rather — I mean, it's wrong, but the question for you is, could a state court have reasonably understood Ewing in a way that makes the offense here not so disproportionate to the punishment? And they could have, because a state court could have treated that language seriously in Ewing v. California. How, if you are a homeless person and you have no address, how can you register an address? You register where you're located, Your Honor. Change places every night, every two nights? You're supposed to say under the highway overpass, freeway 605, or what do you say? I'm sorry.  Well, I'm just asking you if you are a homeless person, how you can report. I would have to do more research on the specifics of that, Your Honor. His guilt or innocence is not in question, and therefore, I haven't really dug into that. He violated the statute. Yes. Well, should he have registered when he was in prison? I'm sorry? Should he have filed a change of address when he was in prison? During what? He was in prison before this happened. Should he have registered a change of address? I believe the requirement kicks in when you're released. Well, it doesn't say that. It says you register a change of address. He had been moved to a prison. Was he guilty at that point because he didn't register? Your Honor, I don't have an answer for that. But he wasn't his arrest at he was found on the streets here. He was not found he was not in prison when they found he violated the statute. Did he have a change of address if he didn't have an address? Again, Your Honor, if the question is his guilt of the offense, first, that's not exhausted here. It wasn't raised at any point as a basis for finding unreasonableness. It certainly is relevant. I can't agree with you, Your Honor. It really isn't relevant given that he was found on the street, and he is not challenging his guilt. If he were, that would be a different – there would be a claim that there's insufficient evidence to show he violated the terms of Penal Code Section 290. So the question then becomes, what are the benchmarks for an Eighth Amendment violation? And if it's purely the statute, which it doesn't seem to be, you're restricted to that, the question is, what else can you look at? In your view, when one is making an Eighth Amendment decision, what are the appropriate factors one can look at to determine whether such a sentence would violate the Eighth Amendment? Well, the question, again, Your Honor, isn't what one can look at, but what a state court must look at in light of the Supreme Court precedent. But I'm asking you a different question. Then I do not understand your question. I'm asking you what are the relevant factors. Because if the state court didn't look at those, then that would be an unreasonable application of Federal law. So the state court looked at the fact that – they certainly looked at the fact that he committed a felony, and he had two prior triggering felonies under the Three Strikes Law. I can pull up the Court of Appeals opinion if you want, but nothing – So in other words, nothing would ever be a violation of the Three Strikes Law? Nothing would be a violation of the Eighth Amendment if you commit a felony and you have two prior triggering felonies, Your Honor, or at least so some fair-minded jurist could read Ewing to hold. The question isn't, Your Honor, what this Court would conclude is a violation of the Eighth Amendment. We understand that you have to look at it through AEDPA, but I'm asking you a different question which you don't seem to want to answer under the Eighth Amendment. And that is, could you ever have an Eighth Amendment violation in your view so long as there was a felony and two prior qualifying offenses? My reading of Ewing is that it does not. Ewing, of course, was a direct appeal case, so they weren't down. And in Ewing, the Court said neither the Eighth Amendment nor the Court's precedent forecloses a legislature from saying the triggering felony doesn't matter. So as long as you've got a felony and you've got at least two priors, then under Footnote 2 of Ewing, the Eighth Amendment's done with you. So, yes, in my view, you can't. But it doesn't really matter, again, what my view is because we are in an AEDPA case. And what matters is, could some fair-minded jurist think that? And someone could, given that that's the language of the Supreme Court. I have no additional points to make, Your Honor. Thank you. You've exceeded your time, but we'll give you a minute and a half for rebuttal. I greatly appreciate that, Your Honor. The footnote from Ewing does not completely foreclose review. It just says it's not a determinative factor. Also, whether there can be a debate on this issue is shown by the fact that the very court of appeal whose case is being reviewed here, the Third District, has gone both ways on this issue. In cases cited in our brief, Carmody, they found it was a violation. In Meeks, they found it was not a violation. The fair-minded jurist standard does not mean that if there's one judge out there who agrees with the result, that's enough to foreclose review. In every AEDPA case, there are judges who've ruled the other way, and yet relief is granted in some exceptional cases. So that the fair-minded jurist standard does not mean the one low and mad jurist out there who supported this. It has to be looked at as fair, as an objective standard, which is fair-mindedness. I appreciate that the Court has extended me extra time. That's the two points I wanted to make. If there's no more questions. Thank you, Your Honor. Thank you very much. I'd like to thank both of you for coming this afternoon and for your arguments. The case just argued, Crosby v. Schwartz is submitted. Thank you. We're adjourned.
judges: Noonan, McKeown, Smith